DGB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CR-156

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | INDICTMENT |
| ) | |
| DARNELL WILLIAM KING ) | |

The Grand Jury charges the following:

## INTRODUCTORY ALLEGATIONS

1. The Defendant, DARNELL WILLIAM KING (or "KING"), generated and trafficked in fraudulent identity documents and access devices, which he either sold for the purpose of executing fraud schemes, or which he used directly to engage in fraud schemes, conspiring with others to do so. KING and other members of the conspiracy then used the fraudulent documents and stolen identities to engage in a series of schemes and artifices to defraud private lenders in the Eastern District of North Carolina.

2. KING, and others known and unknown to the Grand Jury, also conspired to defraud—and did defraud—the United States Government. This scheme involved frauds upon institutions and agencies engaged to provide financial assistance to the public arising from the COVID-19 pandemic.

1

3. Finally, KING illegally possessed a firearm that had traveled in interstate and foreign commerce even though he knew that he had previously been convicted of a felony offense punishable by more than one year of imprisonment.

4. At all times relevant to this Indictment, KING was a resident of the Eastern District of North Carolina.

I. **THE PAYCHECK PROTECTION PROGRAM (PPP) LOAN SCHEME AND ARTIFICE TO DEFRAUD**

5. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, which was designed to provide emergency financial assistance to millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic.

6. The United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and by assisting in the economic recovery of communities after disasters.

7. Also in March 2020, the President declared an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. §§ 5121 et seq.) in response to the COVID-19 pandemic. Many forms of assistance made available pursuant to a Stafford Act declaration are funded through the Disaster Relief Fund (DRF), which is the primary source of funding for

the federal government's domestic general disaster relief programs. The CARES Act included $45 billion in appropriations for the DRF.

8. Another source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

9. To obtain a PPP loan, businesses were required to submit a PPP loan application, signed by an authorized representative of the business, acknowledging the program rules. The business was required to state (a) its average monthly payroll expenses, or in the case of sole proprietorship, its gross income; and, if applicable (b) the number of employees and to provide documentation showing their payroll expenses. These figures were used to calculate the amount of money the small business or sole proprietorship was eligible to receive under the PPP.

10. A PPP loan application was required to be processed by a participating financial institution ("Lender"). Many Lenders constituted financial institutions, as that term is defined in Title 18, United States Code, Section 20. If a PPP loan application was approved, the Lender funded the PPP loan using its own moneys, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the Lender to the SBA in the course of processing

the loan.

11. PPP loan proceeds were required to be used by businesses on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. In the case of a sole proprietorship, permissible expenses were general business expenses and owner compensation. Loans provided through the PPP had government-backed guarantees and were 100% forgivable if the borrower submitted documentation to the PPP lender and SBA certifying that the borrower complied with all PPP requirements and rules.

12. Beginning at least as early as in or about March 2021 through in or about November 2021, the Defendant, KING, conspired with L.J., L.B., and others to engage in fraud upon the PPP program. L.J. was a purported business owner who engaged in a variety of frauds, often with KING, including upon the PPP program. L.B. was an associate of L.J. who assisted in the commission of the PPP fraud scheme.

13. One PPP loan qualification was that the applicant was an independent contractor, sole proprietor, or other qualifying business classification with self-employment income. Further, the applicant must have been previously self-employed or in operation as a sole proprietorship as of February 15, 2020. KING did not meet these eligibility requirements because in reality, KING had little or no legitimate self-employment income in 2020. Therefore, in order to fraudulently apply for a PPP loan, KING falsely represented that he had been earning

4

substantial income prior to the COVID-19 pandemic as a driver for Uber Technologies, Inc. ("Uber").

14. In furtherance of the fraudulent application, KING, L.J., or L.B. generated a forged bank statement and a false Schedule C[1] for 2020 reporting fictitious gross earnings of $78,100 as an Uber driver. In reality, D.K. had never driven for Uber or earned any such income.

15. The fraudulent PPP application was electronically submitted by L.J. or another member of the conspiracy acting on KING's behalf, and received through SBA servers located in Virginia and Oregon, using the fraudulent information described above, by electronically transmitting the information to the Lender, Benworth Capital Partners, LLC, which was headquartered in Florida and Puerto Rico, via interstate wire transmission.

16. Benworth Capital Partners, LLC, was a "mortgage lending business" as that term is defined in Title 18, United States Code, Section 27. Thus, Benworth Capital Partners, LLC, was a "financial institution" as that term is defined in Title 18, United States Code, Section 20(10).

17. On or about May 10, 2021, KING received $16,270 of fraudulent PPP proceeds, which were deposited via interstate wire transfer into KING's Navy Federal Credit Union bank account ending in -2713. In exchange for their assistance in obtaining COVID-19 loans, after receiving the fraudulent PPP

---

[1] A "Schedule C" is formally known as "Schedule C (IRS Form 1040), Profit or Loss from a Business (Sole Proprietorship)."

proceeds, KING sent L.J. $2,500 by electronic transfer.

## II. THE IDENTITY THEFT SCHEME AND ARTIFICE TO DEFRAUD

18. Companies known as Credit Reporting Agencies (CRAs) are in the business of assembling and evaluating consumer credit information for the purpose of providing reports about the credit-worthiness of consumers to third parties. These reports are commonly known as "credit reports." CRAs include such companies as Equifax, Experian, and Transunion.

19. CRAs sell credit reports to businesses to assist those businesses in making decisions concerning whether, and on what terms, to do business with the potential customer that is the subject of a particular credit report.

20. Credit reports typically contain a credit score, which is derived from a statistical calculation that quantifies the credit risk posed by a prospective customer, who is identified by such factors as the customer's name and Social Security Number. The credit score of a particular customer is influenced by many factors, including the consumer's payment history, utilization of credit, balances, available credit limit, and length of credit history.

21. Credit reports are derived from information provided to CRAs by entities that, during the course of their business, acquire information concerning the credit and payment histories of their customers, who are identified by, among other things, their name and Credit Profile Number (CPN). CRAs utilize the consumer's Social Security Number as the consumer's CPN.

22. Lines of credit, or credit accounts, are the most common item appearing on credit reports. CRAs commonly refer to these as "tradelines." The existence of tradelines, and the timeliness of payments on tradelines, which are linked to a specific individual through their Social Security Number, can impact the ultimate credit score of an individual.

23. Beginning at least as early as in or about December 2021, through in or about February 2022, the Defendant, DARNELL WILLIAM KING, conspired with L.J and others to use personally identifiable information (PII)—such as Social Security Numbers (CPNs), dates of birth, and other means of identification—associated with unknowing victims for the purpose of submitting false and fraudulent loan and credit applications to various private lenders.

24. To effectuate this scheme, L.J. or KING would first identify a CPN associated with "good" credit, meaning that the individual associated with the CPN had a high enough credit score that a fraudulent loan submitted using their identity would likely be approved.

25. Then, L.J. or KING would submit a loan application for a personal line of credit in amounts ranging from approximately $5,000 to $10,000 using a false identity and various PII, including the CPN. These applications were submitted online via the Internet to the lenders, who either used data servers located outside of North Carolina or partnered with CRAs outside of North Carolina to process the applications. Most of the lenders were also headquartered outside of North

7

Carolina.

26. L.J. or KING would create an email address purporting to be associated with the identity of the applicant, which they would use as purported contact information in connection with the applications and to communicate with the lender. The internet service providers associated with those email addresses maintained servers outside of North Carolina.

27. KING or L.J. would then recruit another individual (known as a "Mule") to physically obtain the funds from the lender. Usually, L.J. would send a photo of the Mule to KING. KING then would create fraudulent identity documents, including a driver's license or other purported government identification, displaying the stolen or fictitious PII along with a true photo of the Mule.

28. Equipped with the false identity documents created by KING, the Mule would physically sign the application or other paperwork promising to repay the loan purporting to be the true applicant. The Mule would then bring the fraudulent proceeds to KING or L.J. who compensated the Mule in amounts ranging from approximately $100 to $2,000 per transaction. Sometimes, L.J. and KING would repeat the fraud with the same Mule and stolen identity to obtain additional loans from other banks and lenders.

29. KING and L.J. never repaid any of these fraudulent loans.

8

## COUNT ONE

30. Introductory paragraphs 5 through 17 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

31. From in or about March 2021 through in or about November 2021, in the Eastern District of North Carolina and elsewhere, Defendant DARNELL WILLIAM KING did knowingly combine, conspire, confederate, agree, and have a tacit understanding with L.J., L.B., and others known and unknown to the Grand Jury, to commit offenses against the United States, specifically:

   a. **Wire Fraud**, that is, to knowingly devise and intend to devise a scheme and artifice to defraud the SBA and Benworth Capital Partners, LLC., and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises; and for the purpose of executing the scheme, caused to be transmitted by means of wire communication in interstate commerce any writings, signals, signs pictures, and sounds, in violation of Title 18, United States Code, Section 1343; and

   b. **Bank Fraud**, that is to execute and attempt to execute a scheme or artifice to defraud Benworth Capital Partners, LLC—a financial institution as that term is defined in Title 18, United States Code, Section 20—by obtaining any of the moneys, funds, credits, assets, or securities owned by, or under the custody or control of Benworth

9

Case 5:24-cr-00156-M-KS    Document 1    Filed 05/07/24    Page 9 of 19

Capital Partners, LLC, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1344.

### Purpose of the Conspiracy

32. The purpose of the conspiracy was for KING, L.J., L.B., and others known and unknown to the Grand Jury to fraudulently obtain PPP funds to which KING was not entitled, through false and fraudulent statements, representations, and supporting documents.

### Manner and Means of the Conspiracy

33. KING, L.J., L.B., and others known and unknown to the Grand Jury carried out the objectives of the conspiracy in the manner and means as set forth in paragraphs 5 through 17 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

### COUNT TWO

34. Introductory paragraphs 5 through 17 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein. It is further alleged that the Defendant, DARNELL WILLIAM KING, L.J., L.B., and others known and unknown to the Grand Jury, carried out the scheme and artifice to defraud in the manner and means as set forth in those paragraphs.

35. Benworth Capital Partners, LLC is a "financial institution," as that term is defined in Title 18, United States Code, Section 20.

10

36. From in or about March 2021 to in or about November 2021, within the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, aiding and abetting others, executed and attempted to execute a scheme and artifice to defraud Benworth Capital Partners, LLC—a financial institution—by causing a loan application to be submitted which contained false and fraudulent representations as to the Defendant's purported income prior to the COVID-19 pandemic and other false information, resulting in the disbursement of loan proceeds owned by, and under the custody and control of Benworth Capital Partners, LLC.

All in violation of Title 18, United States Code, Sections 1344 and 2

## COUNT THREE

37. Introductory paragraphs 5 through 17 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

### The Scheme to Defraud

38. From in or about March 2021 to in or about November 2021, in the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, aiding and abetting others, knowingly devised and intended to devise a scheme and artifice to defraud the SBA and Bentworth Capital Partners, LLC, and to obtain PPP loan proceeds by means of materially false and fraudulent representations and promises.

## Manner and Means

39. The Defendant, DARNELL WILLIAM KING, aiding and abetting others, carried out the scheme and artifice to defraud in the manner and means as set forth in paragraphs 5 through 17.

## Use of the Wires

40. On or about April 18, 2021, in the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, aiding and abetting others, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, a PPP application transmitted to and through the SBA's electronic servers in Oregon and Virginia for the purpose of executing such scheme and artifice to defraud.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT FOUR

41. Introductory paragraphs 5 through 17 are realleged and incorporated into this Count as factual allegations by reference as if fully set forth herein.

42. From in or about March 2021 through in or about May 2021, within the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, aiding and abetting others, did knowingly make and cause to be

12

made false statements and reports, for the purpose of influencing in any way Benworth Capital Partners, a mortgage lending business as that term is defined in Title 18 United States Code, Sections 27 and 1014, upon an application, advance, commitment, and loan for himself, in that the Defendant falsely claimed he had made $78,100 in gross earnings as an Uber driver, when in truth and in fact, as the Defendant well knew, he did not earn such legitimate income as an Uber driver.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FIVE

43. Introductory paragraphs 18 through 29 are realleged and incorporated into this count as factual allegations by reference as if fully set forth herein.

44. From in or about December 2021 through in or about February 2022, in the Eastern District of North Carolina and elsewhere, the Defendant DARNELL WILLIAM KING did knowingly combine, conspire, confederate, agree, and have a tacit understanding with L.J., and others known and unknown to the Grand Jury, to commit offenses against the United States, specifically: to knowingly devise and intend to devise a scheme and artifice to defraud various private lenders, and to obtain money and property in the form of personal lines of credit, by means of materially false and fraudulent pretenses, representations, and promises; and for the purpose of executing the scheme, caused to be transmitted by means of wire communication in interstate commerce any writings, signals, signs pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

Case 5:24-cr-00156-M-KS    Document 1    Filed 05/07/24    Page 13 of 19

## Purpose of the Conspiracy

45. The purpose of the conspiracy was for KING, L.J., and others known and unknown to the Grand Jury, to fraudulently obtain personal lines of credit, through false and fraudulent statements, representations, supporting documents and stolen PII.

## Object of the Conspiracy

46. KING, L.J., and others known and unknown to the Grand Jury, carried out the objectives of the conspiracy in the manner and means as set forth in paragraphs 18 through 29 of this Indictment.

All in violation of Title 18, United States Code, Section 1349.

## COUNT SIX THROUGH THIRTEEN

47. Introductory paragraphs 18 through 29 are realleged and incorporated into this count as factual allegations by reference as if fully set forth herein.

## The Scheme to Defraud

48. From in or about December 2021 through in or about February 2022, within the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, aiding and abetting others, knowingly devised and intended to device a scheme and artifice to defraud various consumer lenders by submitting and causing to be submitted fraudulent loan applications containing stolen PII; and to obtain money and property in the form of loan proceeds by means of materially false and fraudulent representations and promises.

## Manner and Means

49. The Defendant, DARNELL WILLIAM KING, carried out the scheme and artifice to defraud in the manner and means set forth in paragraphs 18 through 29.

## Use of The Wires

50. On or about each of the dates set forth below in the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, caused to be transmitted by means of wire communication in interstate commerce the signals, writings, signs, pictures, and sounds described below for each count, each transmission constituting a separate count:

| Count | Approximate Date | Description | Purported Identity of Applicant |
|---|---|---|---|
| 6 | December 15, 2021 | Fraudulent credit application submitted online to Lendmark Financial Services, LLC resulting in disbursement of $7,471.13 | W.J. |
| 7 | December 22, 2021 | Fraudulent credit application submitted online to Lendmark Financial Services, LLC resulting in disbursement of $6,500 | L.B. |
| 8 | December 28, 2021 | Fraudulent credit application submitted online to Lendmark Financial Services, LLC resulting in disbursement of $6,500 | R.C. |
| 9 | January 19, 2022 | Fraudulent credit application submitted online to Lendmark Financial Services, LLC resulting in disbursement of $6,500 | T.P. |
| 10 | February 14, | Fraudulent credit application submitted online to Time Financing Service resulting | N.L. |

|    |                      |                                                                                                              |      |
|----|----------------------|--------------------------------------------------------------------------------------------------------------|------|
|    | 2022                 | in disbursement of $5,728.34                                                                                 |      |
| 11 | February 15, 2022    | Fraudulent credit application submitted online to OneMain Financial resulting in disbursement of $7,500      | N.L. |
| 12 | February 24, 2022    | Fraudulent credit application submitted online to Century Finance, Inc. resulting in disbursement of $3,519.51 | N.L. |
| 13 | February 25, 2022    | Fraudulent credit application submitted online to Regional Finance, Inc. resulting in disbursement of $10,000 | N.L. |

Each row of the foregoing table representing a separate violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FOURTEEN THROUGH EIGHTEEN

51. Introductory paragraphs 18 through 29 are realleged and incorporated into this count as factual allegations by reference as if fully set forth herein.

52. From in or about December 2021 through in or about February 2022, in the Eastern District of North Carolina and elsewhere, the Defendant, DARNELL WILLIAM KING, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, to wit—the name, date of birth, and/or social security number of said other person—during and in relation to the crimes set forth in the corresponding counts of this Indictment identified in the table below, which are felony violations enumerated in Title 18, United States Code, Section 1028A(c), knowing that the means of identification belonged to another actual person.

16

| Count | Victim Initials | Corresponding Counts | Predicate Offenses |
|---|---|---|---|
| 14 | W.J. | 6 | Wire Fraud (18 U.S.C. § 1343) |
| 15 | L.B. | 7 | Wire Fraud (18 U.S.C. § 1343) |
| 16 | R.C. | 8 | Wire Fraud (18 U.S.C. § 1343) |
| 17 | T.P. | 9 | Wire Fraud (18 U.S.C. § 1343) |
| 18 | N.L. | 10, 11, 12, 13 | Wire Fraud (18 U.S.C. § 1343) |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT NINETEEN

53. On or about October 20, 2022, in the Eastern District of North Carolina, the defendant, DARNELL WILLIAM KING, knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, knowingly possessed a firearm—to wit, a CZ Model Scorpion Evo, 9mm pistol—and the firearm was in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

17

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any of Counts One through Four, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation.

Upon conviction of any of Counts Five through Thirteen, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of Count Nineteen or any violation of the Gun Control Act, the National Firearms Act, or any other offense charged herein that involved or was perpetrated in whole or in part by the use of firearms or ammunition, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and/or 26 U.S.C. § 5872, as made applicable by 28 U.S.C. § 2461(c), any and all firearms and ammunition that were involved in or used in a knowing or willful commission of the offense, or, pursuant to 18 U.S.C. § 3665, that were found in the possession or under the immediate control of the defendant at the time of arrest.

The forfeitable property includes, but is not limited to, the following:

18

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense(s) charged herein against DARNELL WILLIAM KING in the amount of at least $633,396.

Personal Property

b) One CZ Model Scorpion Evo, 9mm pistol, bearing serial number F329589, seized on October 20, 2022 from DARNELL WILLIAM KING and any and all associated ammunition

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

MICHAEL F. EASLEY, JR
United States Attorney

DAVID G. BERAKA
Assistant United States Attorney

REDACTED VERSION
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

Date: 5/7/2024