IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CR-00156-M

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DARNELL WILLIAM KING, <br><br> Defendant. | ORDER |

These matters come before the court on Defendant Darnell William King's ("King" or "Defendant") Motion to Suppress [DE 45] and Motion to Reopen Detention [DE 53]. The court heard these matters on January 16, 2025. For the reasons that follow, the court denies King's motions.

I. **Procedural History**

The United States alleges that, based on information gleaned from financial institutions, victims, and cooperating witnesses (and from King himself on social media) of King's involvement in manufacturing fraudulent identity documents, a grand jury indicted King on May 7, 2024. He has been charged with eighteen counts of bank and wire fraud and one count of felon in possession of a firearm, the latter count of which is the subject of the present motion. DE 1. King was arrested and initially appeared before the Honorable James E. Gates, U.S. Magistrate Judge, on May 30, 2024. DE 12. King was appointed counsel and advised of his rights, the charges against him, and the maximum possible penalties. At Defendant's request, the detention hearing was continued from June 4, 2024, to June 13, 2024, at which Judge Gates heard evidence and

granted the United States' motion for detention pending trial. DE 24. Although represented by counsel, King filed pro se notices and motions for relief, including repeated requests for the grand jury transcript, between June and October 2024. At defense counsel's request, the court extended pretrial motions deadlines, continued the arraignment date, and held a conference on November 6, 2024, at which it addressed King's pro se filings. The present motions followed; after the court granted an unopposed extension of time, the United States filed its response to the suppression motion but did not file a written response to the detention motion. King's arraignment has been stayed pending resolution of pretrial motions.

## II. Motion to Suppress

King seeks the suppression of all evidence seized from Candice McMillan's residence at which he "was staying" on October 20, 2022, including a CZ Model Scorpion Evo 9mm pistol, which is the subject of Count 19 of the Indictment. King argues that law enforcement conducted an impermissible general search ("fishing expedition"), that no exception applies, and that the officers' conduct was so flagrant that a blanket suppression should be ordered. Specifically, King contends that the seized firearms[1] were not listed, or even mentioned, in the subject search warrant[2] and that the plain-view exception does not apply because the illegality of the firearms were not immediately apparent and because bodycam video reveals the officers were motivated to use the warrant improperly to seek unauthorized evidence.

In response, the United States contends that the officers' motivation is irrelevant and that the officers seized contraband in plain view when, knowing that King was a felon, they not only

---

[1] Two firearms were seized during the subject search; the other was found next to McMillan's purse in the living room.
[2] The search warrant permitted the search and seizure of documents, photographs, electronic devices, computer hardware and software, and other materials related to charges of financial card theft and identity theft and fraud. *See* Application, DE 45-1.

2

seized one firearm observed on the floor, they also looked in bags in the primary bedroom and found the charged pistol on the same side of the bed where they found King's cell phone, clothes, and shoes. They also found at least one counterfeit social security card in another bag on the same side of the room. According to the government, although King and his girlfriend, McMillan, claimed the firearms belonged to McMillan, officers found a receipt showing the purchase of the pistol by someone other than McMillan. Officers also knew from interviewing King's co-conspirator that he had carried a firearm while meeting with her.

### A. Legal Standards

The defendant bears the burden of proving that his Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). "As a general rule, the burden of proof is on the defendant who seeks to suppress the evidence. Once the defendant establishes a basis for his suppression motion, the burden shifts to the government." *United States v. Adkinson*, 191 F. Supp. 3d 565, 568 (E.D. Va. 2016) (citations omitted). As a defendant bears the burden of proof on a motion to suppress, he too bears the burden of asserting disputed material facts in his motion. *United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024), *cert. denied*, No. 24-5591, 2024 WL 4529870 (U.S. Oct. 21, 2024) (citing *Dickerson*, 655 F.2d at 561). On an order resolving a motion to suppress, the Fourth Circuit will review a district court's factual findings for clear error and legal conclusions de novo. *United States v. Hill*, 849 F.3d 195, 200 (4th Cir. 2017).

When the court is determining preliminary questions concerning the admissibility of evidence, it is not bound by the Federal Rules of Evidence, except those with respect to privilege. *See* Fed. R. Evid. 104(a), 1101(d)(1); *see also United States v. Matlock*, 415 U.S. 164, 172-73 (1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full

3

force at hearings before the judge to determine the admissibility of evidence."); *United States v. McCalla*, 803 F.2d 1181, 1986 WL 17903, at *1 (4th Cir. 1986) (concluding that defendant's assertion that the district court erred by admitting hearsay testimony at the suppression hearing lacked merit, in part, because "Federal Rule of Evidence Rule 104(a) provides that the court at a preliminary proceeding is not bound by the rules of evidence except for the rules governing privileges"). Accordingly, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980).

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation...." U.S. CONST. amend IV. It is well-settled that a "presumption of validity" attaches to a search warrant because a neutral, detached judicial officer must first find probable cause based on facts sworn in an affidavit. *United States v. Mitchell*, 720 F. App'x 146, 152 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "When issuing a warrant and making a probable cause determination, judges are to use a 'totality of the circumstances analysis.'" *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The issuing judge must decide whether, under the totality of the circumstances, "there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (quoting *Gates*, 462 U.S. at 238).

Here, King does not challenge the validity of the warrant but, rather, he questions the validity of the search and seizure. Law enforcement officers must execute search warrants according to "the terms of the warrant's authorization." *United States v. Hicks*, 64 F.4th 546, 555 (4th Cir. 2023) (quoting *United States v. Phillips*, 588 F.3d 218, 223 (4th Cir. 2009)). "When a

4

search is conducted pursuant to a warrant, it is limited in scope by the terms of the warrant's authorization," but these terms "are not to be interpreted in a hypertechnical manner." *United States v. Young*, 916 F.3d 368, 377 (4th Cir. 2019) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)). Instead, a warrant should be read in a "commonsense and realistic" manner. *Id.* (quoting *Phillips*, 588 F.3d at 223).

In this case, it is not disputed that neither firearms nor ammunition were listed (or even mentioned) in the warrant's application or affidavit. As a general rule, warrantless searches or seizures are per se unreasonable. *Williams*, 592 F.3d at 521. But there exist "a few specifically established and well-delineated exceptions," including that "under certain circumstances the police may seize evidence in plain view without a warrant." *Id.* (citations omitted). Under the plain-view exception, police may seize evidence during a lawful search if "(1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character is. immediately apparent." *Id.* (cleaned up); *see also United States v. Hanton*, 189 F. App'x 247, 252 (4th Cir. 2006).

### B. Discussion

No party disputes the validity of the warrant, that the officers were lawfully present in the residence, and that the officers had the right of access to the firearms and ammunition seized in this case while searching for evidence of identity fraud.

#### 1. Law enforcement exceeded the scope of the warrant when they seized firearms at the residence.

King is correct that neither the warrant application nor the attached affidavit mentions firearms or any indication that King may be armed. According to King, both the residence and the

5

firearms seized belong to McMillan and, thus, the firearms' incriminating character was not immediately apparent.

In *United States v. Hanton*, the Fourth Circuit found that a warrant authorizing the seizure of documentary evidence of money laundering was not specific in authorizing the seizure of firearms and, thus, unless an exception applied, the firearms should be suppressed. 189 F. App'x at 251-52. In this case, the warrant application and affidavit mention nothing about firearms and whether King may or has ever possessed them.

### 2. However, the plain view exception applies.

In *Hanton*, as in this case, the defendant argued that the incriminating character of the firearms was not immediately apparent to the searching officers because the residence searched and the firearms seized were owned by someone other than Hanton. The Fourth Circuit found that "it need not be immediately apparent to each involved officer that the items seized are incriminating; 'it is sufficient that the agents collectively had probable cause to believe the weapon was evidence of a crime at the time of the seizure.'" *Hanton*, 189 F. App'x at 252 (quoting *United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996)).

Here, it is undisputed that law enforcement knew King was a felon before they initiated a search of the residence; this information appears in the search warrant affidavit and was shared with all officers in a briefing before the search commenced. *See Hanton*, 189 F. App'x at 252 ("the affidavit specified that [Hanton] was a three-time convicted felon, which was more than sufficient to provide probable cause that the firearms were evidence that he was a felon in possession of firearms."). In addition, although the residence was not owned by King or leased in his name, one of the case agents testified that, during surveillance of King, they observed him and his vehicle present more often at McMillan's house than at King's own apartment. In fact,

6

Investigator Kenneth Kay testified that he searched the apartment at the same time other officers searched the house, and he observed very few items of furniture, no linens on the bed, and a lack of clothing in the closet; moreover, the landlord told Kay that she saw King only at the first of the month for a day or two when he paid the rent. On the other hand, witness testimony and bodycam video revealed that officers found King's cell phone, clothing, and shoes on the left side of the bed, and King requested that an officer retrieve his skull cap and directed him where to locate it in the primary bedroom's closet. Based on this evidence, the officers reasonably believed that items found in the residence could belong to King. *Id.* ("[t]he officers were [] justified in believing that he possessed any firearms found therein, regardless of who actually owned the residence or the firearms.").

The video evidence reflects that McMillan told officers she owned two firearms in the house; one observed near her next to her purse and another upstairs. Officers started searching the primary bedroom from which King emerged and from which his clothing and shoes were retrieved, and found (1) a cell phone on the same side of the bed, which was later determined to be King's, (2) what appeared to be a fraudulent social security card in a book bag on the same side of the bed, and (3) the Scorpion 9mm pistol, to which was attached a 100-round magazine, in a large black bag on the same side of the bed. The officers also found in a bedside table a receipt for purchase of the Scorpion by Arthur Lyons, not Candice McMillan.[3] Thus, seizure of the pistol was warranted not only because officers knew King was a felon but also for the officers' safety and to conduct further investigation into rightful ownership of the firearm. *Hanton*, 189 F. App'x at 252 ("the incriminating nature of the firearms was thus immediately apparent, and their seizure was appropriate under the plain view doctrine."); *see also Williams*, 592 F.3d at 525 (concluding that

---

[3] ATF Agent Alex Crumley testified that he learned later during investigation that Arthur Lyons is a known straw purchaser of firearms.

7

Case 5:24-cr-00156-M-KS    Document 63    Filed 01/27/25    Page 7 of 12

firearm found in lockbox during search for child pornography materials was properly seized under plain-view exception when officer picked it up to determine whether it was loaded and saw that it lacked a serial number, at which time the incriminating character of the gun became "immediately apparent").

King asserts that the plain-view exception does not apply in this case because an officer's statement when he observed the firearm found in the living room—"this is what we were hoping for"—demonstrates that the officers were improperly motivated to use the warrant to search for unauthorized evidence. The court is not convinced. "[T]he principle, well-established in Supreme Court jurisprudence, that the scope of a search conducted pursuant to a warrant is defined objectively by the terms of the warrant and the evidence sought, not by the subjective motivations of an officer." *Williams*, 592 F.3d at 522 (citing *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)); *see also United States v. Srivastava*, 540 F.3d 277, 294 (4th Cir. 2008) ("a constitutional violation does not arise when the actions of the executing officers are objectively reasonable and within the ambit of warrants issued by a judicial officer. As a result, the subjective views of [an executing officer] were not relevant—the proper test is an objective one.") (citing *Maryland v. Macon*, 472 U.S. 463, 470 (1985)). Here, the officer's statement when he saw the firearm is irrelevant to determining whether King's Fourth Amendment rights were violated.[4] *Williams*, 592 F.3d at 522 (rejecting argument that plain-view exception cannot apply when it is officer's purpose from the outset to use warrant's authority to search for unauthorized evidence).

Finally, King contends that the officers' "disregard" of the limitations of the search warrant, together with their "secret objective" to find guns when they entered the house, justify a

---

[4] Even if it were, Corey Scarborough, an officer of North Carolina's Department of Motor Vehicles License and Theft Bureau, testified that he was involved in the search to investigate suspected identify fraud and made the statement when he saw the firearm because officers believed, based on eyewitness evidence, that firearms could be present, but they were not certain.

blanket suppression of all evidence seized. As a general rule, if officers executing a search warrant exceed the scope of the warrant, only the improperly seized evidence will be suppressed; the properly seized evidence remains admissible. *United States v. Squillacote*, 221 F.3d 542, 556 (4th Cir. 2000) (citing *United States v. Jones*, 31 F.3d 1304, 1314 (4th Cir. 1994)). However, "[i]n extreme circumstances even properly seized evidence may be excluded when the officers executing the warrant exhibit a flagrant disregard for its terms." *Id.* (quoting *United States v. Ruhe*, 191 F.3d 376, 383 (4th Cir. 1999)). The Fourth Circuit emphasized that "[t]he extraordinary remedy of blanket suppression of all evidence seized 'should be used only when the violations of the warrant's requirements are so extreme that the search is essentially transformed into an impermissible general search.'" *Id.* (quoting *United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992) and citing *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988)). "Thus, in the few cases where blanket suppression has been ordered, most involved the seizure by law enforcement officials of large quantities of evidence clearly not within the scope of the warrant." *Id.*; *see also United States v. Hill*, 322 F.3d 301, 306 (4th Cir. 2003). Based on this court's application of prevailing law to the evidence presented, the court finds suppression, blanket or otherwise, is not warranted in this case.

Notably, at the end of the hearing, defense counsel informed the court that, although she had not reviewed the case, King wished for the court to consider application of *United States v. Carney*, 356 F. Supp. 855 (M.D. Tenn. 1973) to this case. This court has reviewed *Carney* and finds it inapplicable for three reasons: (1) it was decided prior to the Supreme Court's opinion in *Horton v. California*, 496 U.S. 128 (1990); (2) it is not binding on this court; and (3) it is not persuasive, because it is factually distinguishable from this case. In *Carney*, the court found it was presented with a "novel situation": "instead of there being one search of the defendant's house in

9

which both state and federal officers participated, there were in fact two searches of his premises, one search by state officers for drugs and another search by ATF agents for a silencer." 356 F. Supp. at 857. The court found that, because the ATF agents obtained no warrant for their search and sought only to "piggy-back" onto the state officers' warrant, the search was unconstitutional. *Id.* Here, unlike in *Carney*, the evidence presented demonstrates *one* search of the residence in which both state and federal officers participated.

## II. Motion to Reopen Detention

King contends that he was initially arrested on related state firearm and fraud charges on October 20, 2022, and has been in custody for approximately twenty-seven months. He states that, at his detention hearing before Magistrate Judge Gates, he proffered his older brother as a third-party custodian with whom he would reside in an apartment funded by his parents in Raleigh, North Carolina. Judge Gates rejected the proffer and granted the motion for detention.

Under the Bail Reform Act, a court may reopen a detention hearing and reconsider its decision upon a finding that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Courts must consider the following factors in determining whether to detain a defendant prior to trial: "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the person's "history and characteristics," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). The government bears the burden of proving by a preponderance that no condition or combination of conditions will reasonably assure the defendant's appearance and by a clear and convincing showing that "no condition or

10

combination of conditions will reasonably assure the safety of any other person and the community." *United States v. Shaheed*, 455 F. Supp. 3d 225, 228 (D. Md. 2020) (quoting 18 U.S.C. § 3142(f)).

This is not a presumption case. King presents two arguments supporting his motion: (1) he proffers his parents as third-party custodians, saying they are willing to relocate from New York to North Carolina to reside with him; and (2) his due process rights have been violated by his "unnecessarily" prolonged detention. Regarding the second argument, King refers to arguments made in his motion to dismiss alleging, *inter alia*, violations of his Fifth Amendment rights impeding his desire for a speedy trial. On January 6, 2025, this court denied King's motion. Order, DE 58.

Regarding his first argument, King asserts that his mother and stepfather have come forward with an alternate release plan and offered themselves as substitute third-party custodians, saying "[t]hese family members are older, responsible individuals with no criminal records and they have the means and career flexibility to relocate to North Carolina." Based on the evidence and totality of the circumstances, this court affirms Judge Gates' order and finds the proffer of any substitute custodian has no material bearing on the issue whether release conditions exist that will reasonably assure King's appearance and the safety of any other person and the community. Moreover, it is not altogether clear that King has offered information not known to him at the time of the original detention hearing.

### III. Conclusion

Although officers exceeded the scope of the search warrant when they seized firearms located in McMillan's residence, King has failed to demonstrate that the plain-view exception to a warrantless search does not apply in this case. The seizing officers were lawfully present at the

11

residence pursuant to a valid search warrant; the officers had a lawful right of access to the firearms found while they searched for identity fraud materials; and the firearms' incriminating character was immediately apparent, given King's felon status and the officers' reasonable belief that items located in the house, particularly in the primary bedroom, belonged to King. Accordingly, for the reasons stated in this order and those stated in open court, King's motion to suppress is DENIED.

Additionally, King has failed to demonstrate that he is eligible to reopen his detention and that release conditions or any combination thereof exist that will ensure his appearance and/or the safety of the community. Thus, King's motion to reopen detention is DENIED.

SO ORDERED this 27th day of January, 2025.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE